UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

        Plaintiff,

vs.                                       CASE NO. 8:21-cr-218-WFJ-AAS

JOSHUA FISHER,

        Defendant.
_____/

# DEFENDANT JOSHUA FISHER'S SENTENCING MEMORANDUM AND INCORPORATED MEMORANDUM OF LAW

Comes now the Defendant, Joshua Fisher, and files this Sentencing Memorandum and Incorporated Memorandum of Law, and requests a sentence of 108 months (nine years) in prison, and states as follows:

## Sentencing Guidelines

The Pre-Sentence Report sets forth a guidelines range of 135-168 months in prison, based upon a Total Offense Level of 33 and a Criminal History Category I.

Should the Court rule agree with both defense objections to the PSR, the correct guidelines range will be 78-97 months in prison, based upon a Total Offense Level of 28 and a Criminal History Category I.

1

**Unresolved PSR Objections**

Mr. Fisher has withdrawn any pending PSR objections except the following, both of which affect the guidelines range:

1. Obstruction of Justice – The PSR applies a two-level upward adjustment to every count for alleged obstruction of justice. The adjustment is essentially based upon Mr. Fisher openly complaining to others, including his own family, about co-defendants he believed were cooperating with the government. None of Mr. Fisher's behavior was obstructive. He did not attempt to influence anyone's testimony. He did not attempt to prevent anyone from testifying. He did not physically assault any witnesses.

    In fact, Mr. Fisher was frequently in contact with government witnesses and in the jail and never took any negative actions against them. Though he had every opportunity to obstruct their testimony or physically assault these cooperating defendants and victims, he did nothing of the kind. For example, Mr. Andrews was briefly housed in the same dorm as Mr. Fisher. They hugged and spoke and there were no issues between them. Mr. Sharp and Mr. Fisher were once walked together to their respective dorms at the jail. They hugged and spoke and there were no issues between them. Mr. Fisher and Mr. Bellere lived in the same dorm for a time. They hugged and spoke and there were no issues between them. Mr. Fisher and Mr. Mapoles

were housed at the same jail and on occasion worked out in the recreation yard together. They hugged and spoke and there were no issues between them. Mr. Kessler and Mr. Fisher met in the booking area of the jail. They shook hands, said hello, and there were no issues between them.

Mr. Fisher at times expressed distaste for those cooperating against the group. He has every right to feel that way and committed no obstruction by doing so. Some of those emotions were real but some of his statements about cooperators were made in an effort to ensure no one at the jail thought <u>he</u> was a cooperating witness, for that perception can be dangerous. Surely it would have been better for Mr. Fisher to never open his mouth about cooperating witnesses, but his actions do not rise to the level of obstruction in this case and do not justify a two-level upward adjustment in this case.

2. <u>Acceptance of Responsibility</u> – Mr. Fisher objects to not receiving a downward adjustment for acceptance of responsibility. Mr. Fisher pleaded guilty to all charges and expressed remorse for his offenses. He not denied any of the facts related to his offenses. But on a single occasion during his more than two years of confinement, he attempted to smuggle contraband into the jail.

Mr. Fisher's single incident of misconduct does not in any way change the fact that he accepted full responsibility for the serious crimes charged in this case. He pleaded guilty and did so long before trial so that the government did not have to prepare for trial in his case.

Where will we be if, based upon a minor transgression, we deny acceptance of responsibility credit to defendants who plead guilty early, accept responsibility for their crimes, and save the court and government time and resources? Where will we end up if defendants cannot count on receiving the benefit of that bargain?

Recently, the United States has made a habit of asking the district court to deny credit for acceptance of responsibility where defendants pleaded guilty. In other cases in this courthouse, the government has been seeking denial of the acceptance of responsibility adjustment based upon a defendant's PSR objections. Our district court judges have thwarted those efforts and given defendants the credit they earned and deserve. *See, e.g.*, *United States v. Jones*, 8:23-cr-355-JSM-UAM (district court denied government objection to downward adjustment for acceptance of responsibility); *United States v. Jackson*, 8:23-cr-62-CEH-AEP (same).

Here, the government again seeks to enjoy the benefit of a defendant's early plea while asking the Court to deny the defendant the benefits he

earned. If defendants can't trust the government to hold up its end of the bargain - and the courts don't protect this benefit in the face of government efforts to deny credit - defendants will have almost no incentive to plead guilty.

Based upon the facts and circumstances of this case and good public policy for all defendants and the courts, this Court should give Mr. Fisher full credit for his acceptance of responsibility. Denying him the benefit of his plea would be contrary to the letter and spirit of the guidelines and be a travesty of justice.

### **Application of the § 3553(a) Sentencing Factors**

The Court is fully aware of the applicable sentencing factors and its sentencing discretion, so counsel will not waste the Court's time setting forth the factors or the law in that area. Instead, this memo will discuss the factors most important and applicable to Mr. Fisher's case and which justify a sentence of 108 months in prison.

1. The Nature and Circumstances of the Offense

Mr. Fisher was a member of The Unforgiven and participated in several incidents in which fellow members assaulted and injured fellow members who were being removed from the organization for violating the group's rules. The attacks were violent, hurtful, and unnecessary.

None of the attacks harmed the general public or individuals other than fellow members of The Unforgiven. The Court should consider that the victims all joined The Unforgiven with the understanding that if kicked out of the group they would be assaulted and their patch "covered up" by fellow members. It was an accepted part of membership. It doesn't make it right (and the victims did not deserve the violence and injuries they suffered), but these offenses are simply not as serious as violent acts committed against random innocent members of the community. The guidelines make no distinction between this situation and one in which a defendant violently assaulted random citizens. The Court should, however, consider that distinction.

2. <u>The History and Characteristics of Mr. Fisher</u>

As detailed in the PSR, Mr. Fisher suffered a terrible childhood. He did not merely lack a male role model in his life – he suffered terrible abuse at the hands of his father and his mother's boyfriend. Meanwhile, his mother worked two to three jobs at a time while also attending school, leaving her little time to be a parent to Mr. Fisher during his youth.

The Court should particularly consider of the matter described in Paragraph 173 of the PSR and the effect that had on Mr. Fisher's life and mental health. The trauma he suffered at age 13 was simply horrific and life changing. It made him

hateful and distrustful of others. His continuing serious mental health issues are outlined in Paragraphs 174-175.

Mr. Fisher has no prior criminal convictions and only a single prior arrest. He has never been to jail or prison before his arrest in this case.

Mr. Fisher is close to his son (now age six). Before his incarceration, Mr. Fisher spent significant time with his son, working to be the father he should have had growing up. While in jail, Mr. Fisher speaks to his son three to four times per week to maintain a close relationship.

3.  <u>The Need for Punishment, Deterrence, and Rehabilitation</u>

Mr. Fisher deserves punishment for his crime. As to pure punishment, nine years in prison would be sufficient punishment in this case.

Mr. Fisher does not need a longer prison sentence to deter him from committing another criminal offense. He does need rehabilitation, including drug rehabilitation, mental health treatment and counseling, education, and job skills. Mr. Fisher would benefit from incarceration because it would provide him with what his family situation never gave him – help, guidance, and the education and skills needed to succeed in life. Excessive incarceration beyond the time needed to achieve those goals is unnecessary. In nine years, he will receive all of those services and be prepared to reenter society under the supervision of the Court.

4. <u>The Need to Avoid Unwarranted Sentencing Disparities</u>

Mr. Fisher is among the defendants in this case who pleaded guilty and accepted responsibility for their actions. Some defendants cooperated with the United States and were compensated for that cooperation with lesser sentences. Other defendants, like Mr. Fisher, pleaded guilty and declined to cooperate with the government. To avoid unwarranted sentencing disparities, the Court should consider the sentences imposed upon other defendants who pleaded guilty in this case.

Below is a chart of the defendants in this case who have pleaded guilty[1] and the sentences each received, along with a note as to whether the defendants received a downward departure for cooperation. The only defendants who received sentences of more than 85 months in prison were Criminal History Category VI offenders who pleaded guilty to the more serious kidnapping charge for which Mr. Fisher was not convicted. Therefore, the sentences of Hall and Mikkelson are not good points of comparison for Mr. Fisher.

---

[1] Of the defendants convicted at trial in this case, only one has been sentenced. On May 23, 2024, Joshua Williamson was sentenced to 240 months in prison. His total offense level was 28 and he was in Criminal History Category VI.` *See* Sentencing Minutes (Doc. 1121).

| Name | 5K Motion Granted? | Sentence |
|---|---|---|
| Levi Sharp | Yes | Time Served |
| George Andrews | Yes | Time Served |
| James Mapoles | Yes | 24 months prison |
| David Howell | No | 85 months prison |
| Ryann Howard | No | 23 months prison |
| Ryan McLaughlin | No | 42 months prison |
| Darrin Terranova | No | Probation |
| Steve Anderson | No | 49 months prison |
| Joshua Hall | No | 262 months prison[2] |
| Jarrett Arnold | Yes | 65 months prison |
| William Walker | No | 18 months prison |
| Jason Woodcock | Yes | 24 months prison |
| Brian Mikkelson | No | 192 months prison[3] |

Mr. Howell and Mr. Fisher were involved in similar conduct. Though Mr. Fisher had more counts of conviction, he is a Criminal History Category I (as opposed to a Category V like Mr. Howell). On balance, a sentence of 108 months would be proportionate and not an unwarranted disparate sentence. That sentence would be most of any defendant who pleaded guilty except those in Criminal History Category VI, but appropriately lower than those defendants who went to trial in this case (so far, one has been sentenced to 240 months).

---

[2] Mr. Hall pleaded guilty to a kidnapping in aid of racketeering, which has a statutory maximum of life in prison. His adjusted offense level was 34 and his criminal history category was VI, resulting in a guidelines range of 262-327 months in prison. *See* Minutes of Sentencing Hearing (Doc. 835).

[3] Mr. Mikkelson pleaded guilty to a kidnapping in aid of racketeering, which has a statutory maximum of life in prison. His adjusted offense level was 27 and his criminal history category was VI, resulting in a guidelines range of 130-162 months in prison. *See* Minutes of Sentencing Hearing (Doc. 1082).

**Conclusion**

For the reasons discussed herein, a sentence of 108 months in prison is sufficient but not more than necessary to satisfy the factors set forth at 18 U.S.C. § 3553(a).

                                        Respectfully submitted,

                                        */s/ Mark P. Rankin*
Mark P. Rankin
Florida Bar No. 0177970
The Law Office of Mark P. Rankin, P.A.
520 2nd Ave. South
St. Petersburg, FL 33701
Telephone No. (727) 365-1751
Email: mark@rankinlawoffice.com