UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                              CASE NO. 8:21-cr-218-WFJ-AAS

MAVERICK MAHER
    a/k/a "Saxon"

### UNITED STATES SENTENCING MEMORANDUM

The United States of America, by Roger B. Handberg, United States Attorney

for the Middle District of Florida, hereby files this sentencing memorandum in

support of a request for an above guidelines sentence of 480 months.

## I.    FACTUAL BACKGROUND

Maverick Maher ("Saxon") was the president of the Unforgiven from early

2019 until his arrest in 2021. Prior to his position as president, Maher was a member

of the council, serving as secretary under president Darrin Terranova. Maher joined

the Unforgiven while in the Florida Department of Corrections. At trial, the court

and jury heard days of testimony centered around the violent white supremacist

beliefs and actions of the Unforgiven. Chief among evidence received at trial were

hours of videos on the Marco Polo platform and copies of the constitution. Maher

was the creative mind behind both. Maher's vision and leadership sought to organize

the Unforgiven outside the Florida Department of Corrections, violently purge

members who did not "live right," and expand the Unforgiven's membership and

geographic influence.

## Count Two

On January 19, 2019, Unforgiven member Levi Sharp hosted a state-wide Unforgiven meeting at his home in Satsuma, Florida. The night before the meeting, Maverick Maher informed members that they would need to take C.L.'s patch. So, Joshua Fisher, Sharp, Maher, George Andrews, and others beat Unforgiven member C.L., ostensibly for C.L.'s violation of Unforgiven rules. The beating knocked out C.L.'s teeth, gave him a concussion, and caused him to repeatedly lose consciousness. While C.L. was held down, Maher forcibly tattooed black ink stains over C.L.'s tattoos. Fisher urinated on C.L.'s head.  During the beating, Fisher possessed a firearm. Fisher claimed to the Council that he would have killed C.L. if they had not been at Sharp's house and brandished a firearm.

## Count Four

In or around January 2019 and continuing until at least in or around July 2019, in the Middle District of Florida and elsewhere, Maverick Maher, Joshua Fisher, Ryan Mclaughlin, George Andrews, II, James Mapoles, Ryann Howard, David Howell, Darrin Terranova, Steve Anderson, and William Walker, discussed, and voted that members of the Unforgiven would commit a violent assault on T.B. Specifically members voted to forcibly remove T.B.'s Unforgiven tattoo (placed on his neck), and a tattoo on T.B.'s wife. Howell suggested taking T.B.'s wife's tattoo "completely off." The planned assault was in response to allegations that T.B. had violated the rules of the Unforgiven and supported the leadership of a prior enterprise

President. During the discussion, members made clear that revoking T.B.'s membership would likely require violence and possibly even the murder of T.B.

## Count Five

On or about February 1, 2019, Fisher and McLaughlin, along with other members of the Unforgiven Council, conspired to ride through Pasco County, Florida, to commit extreme violence against the Aryan Brotherhood. The defendant specifically proposed "bustin bitches' knee caps," "busting bitches' heads wide open," and "smacking bitches in the mouth." The defendant held a large socket wrench up while making these proposals on video messages. McLaughlin said that he was on "CRD" (community release), but that he loved the family and would go anywhere. He said that he would take a four-man wrecking crew," and an "all star team."

Maverick Maher directed the Council to discuss the specific plans on a more secure messaging app, after which McLaughlin announced to the group that "the "Pasco shit is sealed up. I'll reach out to bros I want to come with me." In furtherance of the planned violence against the UAB, the defendant proposed talking to incarcerated members of the Unforgiven about having the UAB eradicated in prison, and getting UAB members "fucked up, sliced up, and covered up." The defendant proposed paying inmates to hurt UAB members "for the family." Fisher quoted Mein Kampf and said that the Unforgiven was not a debate club, but a club of action.

## Count Six

3

James Mapoles and Maher authorized the beating on people who disrespected the Unforgiven online, with Mapoles transmitting threats of bodily harm to the person who disrespected the Unforgiven. Maher sanctioned the violent threats and calls to carry out the violence because the tenants of the constitution demand the Unforgiven not tolerate disrespect.

### Count Seven

On or around February 11, 2019, Maverick Maher, along with Fisher, Steve Anderson, and James Mapoles discussed violently revoking the patch of H.W. Mapoles called for removing H.W.'s patch. Anderson noted that, because H.W. still supported a prior president of the Unforgiven (who was ousted for his hesitancy to commit violence), Anderson himself was ready to commit acts of violence against H.W. Fisher noted, through song, that he feels H.W. should "die, motherfucker, die!"

### Count Eight

Between February and March 2019, Maher and his fellow co-conspirators conspired to travel to Panama City and carry out attacks on "gray boys" and "race traitors" who were disrespecting the Unforgiven through a dispute with an Unforgiven member.

### Count Twelve



*Figure 1 Injury inflicted to C.S.*

On or about July 25, 2020, Unforgiven members gathered at Levi Sharp's residence in Satsuma, Florida. During the gathering, Jason Woodcock presented the members with information that C.S., then a member of the Unforgiven, was using narcotics in violation of Unforgiven rules. Maher ordered Fisher, Shawn Ruark, Jason Woodcock, and others to repossess C.S.'s patch. Fisher, Ruark, and Woodcock travelled C.S.'s house in Lake City, Florida. Once there, Fisher, Ruark, Woodcock, and others forced entry into C.S.'s home. During the entry, an attacker struck C.S. on his forehead using the butt of a shotgun. The attackers beat C.S. and used a knife to cut C.S.'s patch, which is a tattoo placed on C.S.'s upper back at this base of C.S.'s neck. While leaving, the attackers said something about "your neighborhood white supremacists."

### Count Thirteen

On or about July 2020, W.H., then a member of the Unforgiven, was confronted at his home in Pasco County by Fisher, Shawn Ruark, and Brian

Mikkelson.  At the time, W.H. was a sex offender and had refused to conform to the Unforgiven's structure. After W.H. stated that he would not allow his patch to be repossessed, Fisher, Ruark, and Mikkelson attacked him. The attackers beat W.H. with their fists and weapons. During the beating, Fisher pulled a black handgun out of his waistband and Mikkelson threatened to burn W.H.'s patch off with a hand torch that he had with him. Eventually, Fisher held W.H. down in a chair while another attacker covered the patch on the back of W.H.'s neck with a tattoo gun. This caused scarring to the back of W.H.'s neck. During the attack, W.H. heard the attacker say that "Saxon said to do this."

<u>OBJECTIONS</u>

**The defendant objects to the offense conduct presented at trial contained in paragraphs 41-48, 71, and 72.**

The Court and jury heard ample testimony to support these paragraphs at trial. The defendant himself testified that he committed the offense against C.L. and provided an explanation for his actions alleging some form of consent- equating the victim to a child who knows he has to take his medicine but doesn't want to.

This objection should be overruled.

**The defendant objects to the application of injury points at paragraphs 88, 92, 146, 141, 145, 146, 147, 149, 159, 190**

Permanent injury is described in the commentary of §1B1.1 to include "obvious disfigurement that is likely to be permanent." The evidence in this case established the injuries to each victim, which for C.L. and W.H. included the forced

tattooing over their "patch" and other tattoos on their persons and for C.S. included being struck by a shotgun and having his back stabbed open. The jury received photographs documenting the permanent disfigurement and heard directly from C.S. and W.H. as to the injuries suffered from these attacks.

These objections should be overruled.

**The defendant objects to role enhancements at paragraphs 90, 92, 97, 99, 104, 106, 111, 113, 118, 120, 125, 127, 134, 136, 143, 145, 146, 147, 149, 152, 190, and 199.**

Under § 3B1.1 of the Federal Sentencing Guidelines, a defendant who acts as an organizer or leader of a criminal activity that involves five or more participants shall be increased by 4 levels. Here, Maher was a member of the council for a portion of the conspiracy, but was the president for a majority of the time charged in this case. Maher drafted and implemented the written constitution, organized the regions, maintained a book of life, and managed the Marco Polo accounts. The evidence at trial showed Maher maintained the exile/cover up list. Additional testimony and exhibits demonstrated Maher as the individual who member sought to verify the standing of a member. Maher also described how "your stabbing is my stabbing" when encouraging others to feel united in their enforcement of the constitution.

These objections should be overruled.

**The defendant objects to the enhancement for obstruction of justice at paragraphs 80, 91, 92, 98, 99, 105, 106, 112, 113, 119, 120, 126, 127, 135, 136, 144, 145, 146, 147, 149, 152, 190, and 199**.

Under § 3C1.1 of the Federal Sentencing Guidelines, a defendant who willfully obstructs or attempts to obstruct the administration of justice is due to have an increase of two levels for obstruction. Here, probation assessed the enhancement based on the defendant's actions July 15, 2021. Maher sought to have member "go dark" and also attempted to delete the Marco Polo platform, as evidenced by the cellphone extraction introduced at trial. (Trial exhibit 123-b).

The Court directed the parties to brief the potential application of § 3C1.1 as it relates to Maher's perjurious testimony at trial. Where the court finds a defendant presented false testimony concerning a material matter with the willful intent to provide false testimony rather than as a result of confusion, mistake, or faulty memory at trial, he is appropriately assessed an obstruction enhancement at sentencing. *See United States v. Dunnigan*, 507 U.S. 87, 87, 113 S. Ct. 1111, 1113 (1993); *United States v. Stahlman*, 934 F.3d 1199, 1227 (11th Cir. 2019).

At trial, Maher testified for nearly four hours about how the Unforgiven was not a white supremacy group, about his role in seeing the constitution upheld, and his assertion that he never ordered violence. Maher's testimony was contradicted by other pieces of evidence and testimony of Jason Woodcock, W.H., T.B., and other member of the Unforgiven at trial. Maher himself authorized violence on recorded videos through Marco Polo. These are not mere failures to recall, but instead

8

Maher's entire defense and the thrust of his testimony. Maher attempted to undercut the enterprise assertion, attempted to refute testimony and evidence of his own statements, like those made in trial exhibit 8p where Maher says he is "ready to run it […] the full declaration of war on treason […] however many wanna stand on the opposite side of the constitutions…get on the other side, and we'll fucken hooligan brawl this out for the rights to that goddamn patch."

While the Court can certainly make the requisite finding of perjured testimony at trial, there is evidence of obstruction through Maher's text messages and actions contained in the defendant's phone which show Maher directing other to "go dark" and his own attempt to delete their covert communication platform.

This objection should be overruled.

**The defendant objects to the lack of reduction for acceptance**.

Under § 3E1.1 of the Federal Sentencing Guidelines, a defendant shall receive a decrease of two- levels if the defendant clearly demonstrates acceptance by timely notifying the government of his intent to plea.

While there are limited times a defendant can go to trial and still qualify for the reduction under acceptance, this is not one of those occasions. Maher went to trial on all counts. Maher has not, at any point, accepted responsibility for his actions. Maher obstructed justice, a disqualifier under the guideline application notes.

This objection should be overruled.

## SENTENCING FACTORS UNDER 3553(a)

While the Court has jurisdiction to impose a sentence of up to 79 years in prison, the United States is requesting a sentence of 480 months' imprisonment. The circumstances of the offense and the need to protect the community demand big numbers in a sentence. *See* 18 U.S.C. § 3553(a)(1). A sentence of 480 months' imprisonment will also serve to promote the defendant's respect for the law, deter criminal conduct, protect the community, and avoid unwarranted disparities. See 18 U.S.C. § 3553(a).

A district court must consider all of the listed factors in 18 U.S.C. § 3553(a), it however, is not required to give all of the factors equal weight. *United States v. Shaw*, 560 F.3d 1230, 1237 (11th Cir. 2009). A district court is permitted to attach greater weight to certain factors over others. *Id.* (citing *Gall v. United States*, 552 U.S. 38, 57 (2007). The decision about how much weight is assigned to a particular factor is "committed to the sound discretion of the district court." *United States v. Williams*, 526 F.3d 1312, 1322 (11th Cir. 2008) (internal citation omitted).

Maher is a brutal and violent white supremacist who lacks any respect for the law. Maher believes his constitution is supreme and acts as judge and jury for violations conducted by members. Maher sought to organize and expand this enterprise. Maher's testimony at trial demonstrated his delusional sense of justice rooted in the laws of the Unforgiven, not those of the United States of America.

10

Maher is no stranger to prison. Maher was first federally prosecuted in a troubling firearm offense tied to a burglary. In 2000, at age 18 and while on felony probation, Maher and his brother committed a burglary and stole a number of firearms. Maher and his brother sent the victims a recording of themselves taking responsibility for the burglary. The men threatened to kill law enforcement and threatened that they would not be taken alive. Maher's brother directly spoke to officers listening and manipulated each firearm into the recording. Maher discussed one firearm he called "Destiny" and described the spliced bullets which will "bounce off in you and then your wife and then your family." Maher was found with the stolen firearms and spliced ammunition.

After serving this federal sentence, Maher violated supervised release and served another 24 months for his arrest in an armed burglary and aggravated assault arrest. Maher has additional priors for the 2006 aggravated assault and armed burglary which saw Maher break into a home and take firearms, which he later used to threaten someone.

A sentence of 480 months serves to protect the community and to deter criminal conduct by this defendant and others like him. Maher's actions are not isolated, but rather the evolution of a criminal to a criminal organizer. Maher is proud to boast that he leads from the front, and in this case he certainly did just that. Maher confined and mutilated C.L., covering tattoos on C.L.'s body because it is what *Maher* wanted. He made threats against T.B. and H.W. because they

11

challenged the Unforgiven. Maher's words matched his actions and demonstrate that others were willing to answer the call to action bellowed Maher through Marco Polo.

A sentence of 480 months avoids unwarranted disparities with co-defendants in this case as well.

A sentence of 480 months is appropriate given the nature and circumstances of these offenses, the need to protect the community, and the need to deter this conduct in the future.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney


By:   /s/ Samantha E. Beckman
      Samantha E. Beckman
      Assistant United States Attorney
      FL Bar No. 102533
      400 N. Tampa Street, Suite 3200
      Tampa, Florida 33602-4798
      Telephone:   (813) 274-6000
      Facsimile:    (813) 274-6358
      E-mail: samantha.beckman@usdoj.gov

**U.S. v. Maverick Maher**                    **Case No. 8:21-cr-218-WFJ-AAS**

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to counsel for the defendant.

/s/ Samantha E. Beckman
Samantha E. Beckman
Assistant United States Attorney
Samantha E. Beckman
Assistant United States Attorney
FL Bar No. 102533
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone:   (813) 274-6000
Facsimile:     (813) 274-6358
E-mail: Samantha.beckman@usdoj.gov